UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 09-319-JBC**

**ARCH INSURANCE COMPANY, ET AL.,**                                            **PLAINTIFFS,**

**V.**                **MEMORANDUM OPINION AND ORDER**

**BROAN-NUTONE, LLC,**                                                    **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on Defendant Broan-Nutone's Motion for Summary Judgment or Alternative Sanction for Spoliation (R. 71). Because Plaintiffs Arch Insurance Company and Montgomery County Fire Protection District 1 a/k/a Montgomery County Fire & Ambulance, Montgomery County Fire & Protection Properties, Inc., ("Montgomery Fire") breached their duty to preserve evidence that they knew was relevant to future litigation, the court will grant Broan-Nutone's motion for an appropriate jury instruction.

This case arises out of a fire that destroyed the Montgomery Fire property on Main Street in Mount Sterling, Kentucky on September 17, 2007. Arch Insurance paid $493,000 to Montgomery Fire for the loss of the building and personal property. Montgomery Fire indemnified the lessor of the building, the City of Mount Sterling, for the damage to the property as it was required to do under its lease. Donan Engineering Company was engaged by Janie Brosze of Collins and Company, a third-party administrator representing the City of Mount Sterling, to

investigate the cause of the fire. The Donan representatives, along with representatives of Broan-Nutone and others, inspected the scene of the fire on November 1, 2007. The Donan representatives determined that the ignition source of the fire was a fan/light assembly manufactured by Broan-Nutone, and after the investigation they removed it and another ceiling light fan assembly, a wall panel, and associated wiring for storage at Donan's Louisville office.

An inspection of the evidence from the scene was held at the Donan Louisville office on November 29, 2007. Representatives of Broan-Nutone, Arch Insurance, and Montgomery Fire attended this inspection. Based on this investigation, Steven Weddington and Russell Zeckner of Donan Engineering determined that the fan/light assembly was the ignition source of the fire, and that the fire was caused by a manufacturing or design defect in the assembly:

> The examination of the exhaust fan/light produced a credible theory regarding an ignition source. The evidence suggests that heating sufficient to ignite other combustibles existed in an isolated area within the wiring for the fluorescent light fixture. Because this heating existed in an area where the exemplar showed mechanical damage, we theorize that during manufacture, some wires were pulled too tightly against metal edges in the burned unit. Over time, the vibrations created by the fan's constant operation exacerbated this issue, and, eventually, resistance heating occurred which was sufficient to be an ignition source.

Weddington/Zeckner Report (Jan. 16, 2008), Ex. 1 to Weddington Deposition (R. 80).

Donan retained possession of the fan/light assembly after the November 29, 2007 inspection, and sent invoices to Collins for storage fees. In April 2008,

Donan intentionally destroyed the fan/light assembly, wiring, and wall plate that had been recovered from the site of the fire at the instruction of Brosze of Collins. Collins took this action of its own initiative, presumably to avoid incurring further storage fees, and neither Arch Insurance nor Montgomery Fire were consulted before Collins ordered the destruction or affirmatively assented to it. Communications between the parties indicate that representatives of Arch Insurance or Montgomery Fire did not learn of the destruction of the fan/light assembly until Broan-Nutone requested to inspect it in March 2009, nearly a year after it was destroyed.

In 2009, after the destruction of the fan/light assembly, David Riggs, a senior forensic engineer with Donan, was hired to perform testing on other fan/light assemblies of the same model, in order to confirm or replicate the hypothesis proffered by the Weddington/Zeckner report. Riggs was unable to confirm or reproduce the conditions that caused the fire as theorized by Weddington and Zeckner, and found no deficiencies in the manufacture or design of the units he tested that could potentially cause a fire.

Arch Insurance and Montgomery Fire brought this action against Broan-Nutone, alleging that the fan/light assembly caused the fire as a result of a manufacturing or design defect, in Montgomery Circuit Court in September 2009, and Broan-Nutone removed to this court. Broan-Nutone now moves the court to sanction Arch Insurance and Montgomery Fire for spoliating evidence by granting

3

summary judgment in favor of Broan-Nutone or, in the alternative, providing an adverse inference instruction to the jury. A sanction in this case is appropriate, because Arch Insurance and Montgomery Fire had an affirmative duty to preserve the evidence at the time it was destroyed, because they negligently allowed the evidence to be destroyed, and because the fan/light assembly was evidence of central importance to both the claims and defenses in this action. *See Beaven v. Dept. of Justice*, 622 F.3d 540, 553 (6th Cir. 2010).

Arch Insurance and Montgomery Fire had an affirmative duty to preserve the fan/light assembly as relevant evidence in anticipation of bringing suit against Broan-Nutone. *John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008); *Fujitsu Ltd. v. Fed. Express. Corp.*, 247 F.3d 423 (2nd Cir. 2001). The fan/light assembly is evidence of central importance to this action. While other evidence supports the assertion that the fire originated at the fan/light assembly, Arch Insurance and Montgomery Fire's claims that the fire started because of a manufacturing or design defect can be evaluated only by examining the assembly itself. Arch Insurance and Montgomery Fire assert that they had no duty to preserve the evidence "indefinitely" and that by the time the fan/light assembly was destroyed, their duty to preserve it had ended. Because the duty to preserve evidence in anticipation of upcoming litigation extends up to and through litigation, *see Goetz* at 459, *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001), this argument lacks merit.

Arch Insurance and Montgomery Fire did not knowingly or purposefully cause the fan/light assembly to be destroyed, but they were negligent in leaving it in Donan's possession. The plaintiffs knew or should have known that the City of Mount Sterling had engaged Donan to investigate the fire and that its agent Collins was paying storage fees to Donan for the relevant evidence. The City, having been fully indemnified for its loss, had no claim for damages against Broan-Nutone and no intention to bring or join a lawsuit against Broan-Nutone; therefore, the City had no duty to account for or to preserve the evidence, and no duty to continue paying storage fees on behalf of other parties who might pursue litigation.

Arch Insurance and Montgomery Fire were not justified in relying on others who were under no obligation to preserve evidence on their behalf. The plaintiffs assert multiple times that Collins and the City are "non-parties" that the plaintiffs had "no involvement or relationship with." The plaintiffs have provided no evidence of a relationship with Collins or the City that would give them reason to believe that Collins would continue paying to preserve evidence on their behalf. The plaintiffs do not allege any reason that they would have been prevented from taking custody of the evidence themselves or, at the very least, asking Collins to preserve the evidence on their behalf. Arch Insurance and Montgomery Fire assert that they acted in a reasonable manner with regard to the preservation of the fan/light assembly, but under these circumstances, a reasonable plaintiff, foreseeing and intending litigation, would have taken an affirmative step to ensure that the

evidence around which its theory of liability is centered would be preserved until trial.

Arch Insurance and Montgomery Fire claim this case is analogous to *R.C. Olmstead, Inc., v. CU Interface, LLC,* 606 F.3d 262 (6th Cir. 2010), where the court declined to sanction defendant CU Interface for a third party's intentional spoliation of evidence, but that case is distinguishable on two important points: the entity that intentionally destroyed the evidence was a defendant in the lawsuit; and Ohio law provides a separate cause of action for spoliation that is not available under Kentucky law. In *Olmstead*, CSE Credit Union licensed banking software from its developer, Olmstead, and as part of that licensing agreement, Olmstead provided server hardware that was housed at CSE. As allowed under its contract with Olmstead, CSE engaged the services of CU Interface to provide technical support for those servers. Based on this relationship, CSE began working with CU Interface to develop its own banking software. When Olmstead learned of this, it informed CSE that it would be collecting the hardware and software leased to CSE under the terms of its agreement. Olmstead wanted a computer forensics expert to examine the hardware and software to determine whether CU Interface or CSE had accessed Olmstead's source code in developing its competing banking software. CSE objected to the examination on the basis that the servers might also have stored customer data, and before litigation, CSE's CEO destroyed the servers by drilling holes in them.

Olmstead filed suit against CSE and CU Interface for trade secret and copyright claims, among others. CSE settled with Olmstead after discovery, before the court ruled on the parties' cross-motions for summary judgment, and the district court granted CU Interface summary judgment on Olmstead's remaining claims. The district court declined to sanction CU Interface for CSE's intentional spoliation of evidence, and the Sixth Circuit upheld the district court's exercise of discretion. The district court declined to sanction CU Interface because it found that CU Interface was not at fault for the destruction of the evidence. Olmstead argued that CU Interface should not be allowed to benefit from the act of spoliation committed by its joint venturer CSE, but the district court found that the unfairness of penalizing CU Interface for conduct in which it was not involved outweighed the harm to Olmstead. Essential to this balance was the fact that Ohio recognizes an independent tort for spoliation of evidence. Olmstead's spoliation claim against CSE was among the claims it settled, and therefore Olmstead was not left without a remedy when the court declined to sanction CU Interface for spoliation.

Arch Insurance and Montgomery Fire assert that *Olmstead* provides grounds to find that they were not culpable for the third-party destruction of the evidence in the immediate case, but the facts here are significantly different from those in *Olmstead*. Here, the City and Collins were never parties to the action, nor did they have any stake in its outcome. In *Olmstead*, It was reasonable for CU Interface to leave essential evidence in the care of CSE, who would inevitably be a co-

defendant in any action, because CSE shared CU Interface's duty to preserve evidence.  Here, the City and Collins were under no such duty, and it was therefore unreasonable for Arch Insurance and Montgomery Fire not to take affirmative steps to preserve the evidence.  Furthermore, while Ohio recognizes a tort of spoliation, Kentucky does not, having chosen to address spoliation issues through evidentiary rules and missing evidence instructions. *See Monsanto Co. v. Reed*, 950 S.W.2d 811, 815 (Ky. 1997).  If this court declines to sanction plaintiffs for spoliation, Broan-Nutone is without a remedy.  Finally, it is worth noting that in *Olmstead*, the defendants were charged with spoliation; here, the plaintiffs allowed evidence to be spoliated through their own negligence, then proceeded to bring suit in the absence of that evidence.

Finally, Arch Insurance and Montgomery Fire assert that the destroyed fan/light assembly is not relevant to Broan's claims and that its destruction is not prejudicial.  This claim is not credible.  Broan-Nutone has asserted, and the plaintiffs have acknowledged, that further testing of the fan/light assembly, particularly employing a SEM/EDS (Scanning Electron Microsopy/Energy Dispersive Microscopy) analysis, would tend to prove or disprove the plaintiffs' theories of causation.  The fact that such analysis has the potential to buttress the plaintiff's theories does not mean that the inability to perform the testing is not prejudicial to Broan-Nutone.

Under the federal court's "inherent power to control the judicial process", *Adkins v. Wolever*, 554 F.3d 650, 652 (2009), the court may craft sanctions

against a party for spoliation of evidence that serve both fairness and punitive functions. *Id.* at 653. The determination of an appropriate sanction is left to the trial judge and assessed on a case-by-case basis. *Fujitsu*, 247 F.3d at 436. Here, where the evidence was not purposely or knowingly destroyed by the plaintiffs, the extreme sanction of summary judgment is inappropriate. *See Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001). All parties to this action were able to take the opportunity to inspect the fan/light assembly before it was destroyed, and these inspections were at least sufficient to allow both sides to proffer expert opinions as to whether the fan/light assembly caused the fire due to a design or manufacturing defect. Broan-Nutone is not blindsided by this action or unable to construct a defense because the evidence has been destroyed. Likewise, an irrebuttable adverse inference that further study of the destroyed fan/light assembly would have undermined the plaintiffs' theory of causation is not warranted here, because no evidence supports a conclusion that the plaintiffs purposely or knowingly caused it to be destroyed to avoid further study. *See Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 554 (6th Cir. 2010); *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.")

There is no evidence here of bad faith on the part of Arch Insurance or Montgomery Fire; however, Broan-Nutone is now unable to investigate the fan/light assembly to refute plaintiffs' causation theory, and is prejudiced as a result. Bad faith is not an essential element of spoliation, s*ee Vodusek*, 71 F.3d at 156, and the court has discretion to craft a spoliation sanction that serves both fairness and punitive functions. *See Adkins*, 554 F.3d at 653. To ensure fairness, Broan-Nutone is entitled to inform the jury that the company was denied a chance to examine the fan/light assembly after Arch Insurance's and Montgomery Fire's experts finalized their theories, and that such examinations could have either confirmed or denied those theories. Furthermore, Broan-Nutone is entitled to present to the jury evidence of Arch Insurance's and Montgomery Fire's negligence with regard to the destruction of the fan/light assembly. The jury will be instructed that they may infer that further testing would have disproved plaintiffs' causation theories but that they are not required to do so.

Broan-Nutone suggests that such a permissive inference is no sanction at all, as it only formalizes "what jurors would be entitled to do even in the absence of a specific instruction," *West v. Tyson Foods, Inc.*, 374 Fed. Appx. 624, 635 (6th Cir. 2010) (discussing without opining on the appropriateness of a permissive inference instruction), and asks instead for a mandatory inference instruction. Broan-Nutone directs the court to *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2nd Cir. 1999), in which the district court dismissed the plaintiffs' case because the

plaintiffs tampered with some of their own evidence and sold other parts, allowing them to be exposed to the elements for a winter before the defendants could examine them. In reversing, the appellate court suggested multiple sanctions short of dismissal, including both rebuttable presumptions and precluding the spoliating party's expert from testifying regarding the evidence. In that case, however, the evidence was spoliated through the direct actions of the plaintiff, rather than through the inaction or negligence of the plaintiff as here. Also, the procedural posture of that case was quite different. The appellate court, in the context of its holding that dismissal was too harsh a sanction, was merely discussing less drastic measures rather than trying to specifically find a proper spoliation sanction, a task which it left to the district court's discretion.

The instruction described above properly compensates for the prejudicial effect of the spoliation of the evidence to Broan-Nutone while not excessively punishing Arch Insurance and Montgomery Fire for their negligent but not-purposeful conduct. It specifically allows Broan-Nutone to present evidence of the testing it would have performed and how the results of those tests might have disproved the plaintiffs' causation theories. Furthermore, a neutral instruction to the jury that it is entitled to believe that such testing would have disproved plaintiffs' causation theories, given directly by the court, carries weight beyond what an attorney can achieve in a closing argument. Finally, a presumption, rebuttable or irrebuttable, that further testing would have disproved plaintiffs'

11

causation theories is unwarranted here, because Broan-Nutone has presented no evidence that such testing would have actually disproved plaintiffs' theories; rather, it has only suggested that further testing would have either confirmed or denied those theories.

Accordingly,

Broan-Nutone's motion for a spoliation sanction against Arch Insurance and Montgomery Fire is **GRANTED**, and a jury instruction conforming with this opinion will be allowed at trial.

Signed on August 31, 2011

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY